# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**KEVIN ANTONIO VAN BUREN**                                              **PLAINTIFF**

**v.**                         **CIVIL ACTION NO. 4:12CV-P52-M**

**SGT. COY** *et al.*                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Defendants Sergeant Carl Coy, Captain Mike Lewis, and Lieutenant Sundie Kamar,[1] by counsel, filed a motion for summary judgment (DN 19) and a renewed motion for summary judgment (DN 25).[2] Plaintiff Kevin Antonio Van Buren, *pro se*, has failed to file a response to the motions, despite being provided with multiple opportunities to do so (DNs 20, 23 & 29). This matter is ripe for consideration, and upon review, the Court will grant the motions for summary judgment.

## I. FACTS

In the verified complaint brought pursuant to 42 U.S.C. § 1983 (DN 1), Plaintiff alleged discrimination "because they are treating me different from other maximum security inmates." He reports that he was the only black inmate in the "max cell" with three white inmates, who were "prejudices and racial." He stated that the white inmates were "calling me racial slurs and

---

[1] Plaintiff spelled this Defendant's name "Komar" in the complaint, but in their answer, Defendants clarified that this Defendant spells his name "Kamar."

[2] Defendants' renewed motion for summary judgment (DN 25) merely updates the Court on Plaintiff's failure to respond to their original motion for summary judgment and to file a pretrial memorandum, and it incorporates by reference the arguments set forth in their original motion for summary judgment. In this memorandum opinion, therefore, the Court will refer only to the arguments presented in the original dispositive motion (DN 19).

disrespecting languages towards me and the guards know that to. So I stood up for myself." He claimed that when "I stood up for myself the 3 white inmates saw me as an potential threat because I wasn't scare of them. I never threating them or disrepect them. So they reported a false claim of conflict against me."³ Consequently, reported Plaintiff, he was sent to segregation on January 22, 2012, "and Im still in seg to. I wont be able to leave seg either. My next court date is Feb 2013." He stated that he was placed in segregation without any disciplinary hearing, action, or report and was "left for dead." Plaintiff reported writing grievance and requisition forms to Defendants Coy, Lewis, and Kamar.

Further, Plaintiff claims that while in segregation he was denied "my Religous services," access to his court-appointed attorney, and access to "any programs." In addition, he alleges that he was denied access to a "propr law library" while in segregation. He states that the "law clearly states that any inmate who has pending charges that are punishable by prison time must be given access to a law library with the rules of civil and criminal procedures. All they have is the KRS book!"

On initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court construed the action as asserting denial of access to religious services and access to courts under the First Amendment and discrimination and denial of due process under the Fourteenth Amendment, and the Court allowed the complaint to continue against all Defendants for monetary and punitive damages and injunctive relief.

---

³Plaintiff fails to described the purportedly false claim, and while he states that the maximum security cells have video and audio recordings in them, he fails to provide a copy of them.

Plaintiff was transferred from the Hopkins County Jail to Roederer Correctional Complex around the end of October 2013 (DNs 26 & 27).

## II. **STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* at 325.

Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* at 322. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In this case, Plaintiff failed to file a response to Defendants' motions for summary judgment. The Court, nevertheless, must consider the substantive arguments proffered by Defendants to determine if they have met their burden. *See Carver v. Bunch*, 946 F.2d 451 (6th

Cir. 1991) (trial court abused its discretion by dismissing complaint based on failure to comply with local rule requiring submission of brief in opposition to motion to dismiss within 15 days of date of service of brief). "The movant always bears this burden regardless if an adverse party fails to respond." *Id.* at 455 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970)). Finally, while Plaintiff did not file an opposing memorandum, a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Williams v. Browman*, 981 F.2d 901, 904-05 (6th Cir. 1992) (noting that under 28 U.S.C. § 1746 "a verified complaint [has] the same force and effect as an affidavit and [can] give rise to genuine issues of material fact").

### III. ANALYSIS

Defendants argue that they are entitled to summary judgment based on qualified immunity and because Plaintiff has failed to demonstrate a First or Fourteenth Amendment violation (DN 19). In support of their motion, they attach the affidavit of Hopkins County Jailer Joe Blue.

Defendants advise that Plaintiff entered the Hopkins County Jail on September 16, 2011 (DN 19, Jailer Blue Aff.). Upon entry, Plaintiff was classified as a "maximum security inmate" because of his charges (attempted murder–domestic violence; burglary–first degree; three counts of wanton endangerment-first degree; tampering with physical evidence; and receiving stolen property-firearm) and his criminal history. *Id.*

### A. *Placement in Segregation*

#### 1. *Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Plaintiff alleges that he was discriminated against "because they are treating me different from the other maximum security inmates." He fails to explain how he is being treated differently to similarly situated inmates or any action taken against him because of his race. He does not allege that he filed a claim of conflict (false or otherwise) against a white inmate and that the white inmate was not placed in segregation. He does not allege that black inmates filed conflicts (false or otherwise) against a white inmate(s) and that the white inmate(s) was not taken to segregation. Plaintiff also claims that video and audio recordings would prove that the conflict claim was false but that staff would not look at the tapes and investigate. He fails to provide the tapes as proof, however.

Prisoners also "are protected under the Equal Protection Clause . . . from invidious discrimination based on race.'" *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). "In prison housing, the Equal Protection Clause forbids racial classifications absent compelling justifications and a narrowly tailored plan." *Id.* (citing *Johnson v. California*, 543 U.S. 499, 509 (2005)). While "inmates have no right to preferable housing assignments, an inmate, like anyone else, retains the right to be free from government-sponsored race discrimination unsupported by a compelling interest." *Id.* (citations

omitted); *Cruz v. Beto*, 405 U.S. 319, 321 (1972) ("[R]acial segregation . . . is unconstitutional within prisons, save for 'the necessities of prison security and discipline.'") (quoting *Lee v. Washington*, 390 U.S. 333, 334 (1968)). "Proof of racially discriminatory intent or purpose is required to uphold a racial discrimination claim." *Mullins v. Arms*, 89 F.3d 834 (6th Cir. 1996) (citing *Washington v. Davis*, 426 U.S. 229, 239-40 (1976)). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff does not allege, much less demonstrate, any jail policy or practice that requires segregation of the races. Jailer Blue avers that the Hopkins County Jail does not have a practice of segregating inmates on the basis of race (DN 19, Aff.). Inmates are placed in cells based on their charges, criminal history, medical needs, behavior, and various other non-racial factors, and inmates are often placed in cells with inmates of a different racial classification. *Id.* Further, during his various times in a maximum security unit, Plaintiff was housed in a pod with a total of twenty-seven inmates, nine of which were African American and eighteen of which were Caucasian. *Id.* These numbers and co-mingling of races contradict any government-sponsored race discrimination claim, and Plaintiff does not refute these facts.

Further, Defendants have shown a race-neutral reason for segregating Plaintiff. They advise that Plaintiff was moved to segregation on January 22, 2012, due to conflicts with other maximum security inmates, who wrote a note alleging that Plaintiff has stolen hygiene products and fought over a "hot pot" (DN 19, Jailer Blue Aff.). Defendants state that Plaintiff, therefore,

was moved "for his own safety and the security of the jail" (DN 19, Jailer Blue Aff.). Plaintiff provides no evidence to the contrary.

Plaintiff having failed to show any government-sponsored race discrimination, his equal protection claim fails, and Defendants are entitled to summary judgment on this claim.

### 2. *Due Process*

In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and instead limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (citations omitted). The *Sandin* Court found no liberty interest in the inmate's 30-day placement in disciplinary segregation.

Thereafter, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possess a liberty interest in avoiding assignment to Ohio State Penitentiary

("OSP"), the state's only Supermax facility,[4] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. at 223-24. Thus, "[i]n deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008).

Defendants explain that the Hopkins County Jail has two maximum security units and one segregation unit (DN 19, Jailer Blue Aff.). Each maximum security unit contains four cells, and in each cell, there are two beds. *Id.* The doors to each cell remain open at all times, allowing physical interaction between all eight men in the unit. *Id.* In the segregation unit, also referred to as a pod, there are six cells, and one inmate resides in each cell. *Id.* Cell doors remain closed in this unit, but inmates have the ability to communicate with inmates in other

---

[4]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*, 545 U.S. at 213.

cells in the pod. *Id.* Additionally, for one hour per day, an individual cell is opened, and the occupant of that cell can roam freely about the pod. *Id.*

In his verified complaint, Plaintiff complains that "By me being in seg the jail is denying me Religous services, access to a propr law library. . . . I don't have any access to my court appointed attorney. I can't ontend any program's by being in seg" (DN 1). He states that "They put me in seg and left me for dead in here without any privilege or any Rights." *Id.* Elsewhere he also claims that he "wont be able to leave seg either. My next court date is Feb 2013." *Id.* He describes no other conditions.

The Court finds that neither the more-restrictive environment in segregation as described by Plaintiff and Defendants nor the duration of Plaintiff's confinement constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. Despite Plaintiff's claim that he will not be able to leave segregation, the evidence reveals that on January 22, 2012, Plaintiff was removed from maximum security and placed in segregation (DN 1; DN 19, Jailer Blue Aff.), and that five months later, on June 22, 2012, he was removed from segregation and returned to maximum security (DN 19, Jailer Blue Aff.). The undisputed evidence, therefore, demonstrates that Plaintiff's placement in segregation was not indefinite, but of a limited duration.[5] *See, e.g.*, *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (five-months in administrative segregation without a hearing not an atypical and significant hardship); *Jones v.*

---

[5]Jailer Blue further states that on August 30, 2012, Plaintiff was returned to segregation after jail staff observed him stealing from his cell mate (DN 19, Aff.). While Defendants do not indicate when Plaintiff was released from segregation thereafter, the record reflects that Plaintiff was transferred to RCC around late October 2013 (DNs 26 & 27), and Plaintiff did not file a supplement complaining about this later return to segregation. Nevertheless, the Court does not find that this one year and two month confinement imposed an atypical and significant hardship on Plaintiff in relation to ordinary incidents of prison life.

9

*Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (two and one-half years); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (conditions of six-month stay in administrative segregation, even if the prisoners' cells were infested with vermin, smeared with human feces and urine, flooded with water, and unbearably hot, were not so atypical that exposure to them imposed atypical and significant hardship under *Sandin*); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months).

Plaintiff has failed to demonstrate the deprivation of a protected liberty interest that would entitle him to procedural due process protections, and his due process claim fails. Consequently, Defendants are entitled to summary judgment on the due process claim.

### B. Denied Religious Services

In his verified complaint, Plaintiff states only that "By me being in seg the jail is denying me Religous services" (DN 1). "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). "Only after a prison inmate shows a sincere belief that his or her religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (explaining that the first requirement in a § 1983 First Amendment free-exercise claim is for the plaintiff to show that the prison's action "substantially burdened his sincerely-held religious beliefs"); *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his

sincerely held religious beliefs.")). In the instant case, Defendants argue that Plaintiff's religion is unknown and that he has not specified *how* he has been denied religious services other than to summarily state that he has been denied such.

Defendants having shown a lack of evidence as to Plaintiff's sincere belief that his religion requires religous services, the burden now passes to Plaintiff to establish the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. In providing no response to the summary judgment motion, Plaintiff fails to establish that the denial of religious services in segregation violated his religious beliefs.[6] Defendants, therefore, are entitled to summary judgment on this First Amendment claim.

---

[6]Even if Plaintiff had established this, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Defendants indicate that Plaintiff was in the segregation unit, which does not allow person-to-person contact, for his own safety and the safety of the jail. Denying congregate religious services in the more secure segregation unit serves a legitimate penological interest in security. *See Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985) ("The specific state interests here are the prison administrators' responsibility for security and discipline. They must ensure the safety of all inmates, prison employees, and the public at large."). "When determining whether a particular restriction is reasonably related to prison security, the court should give considerable deference to prison administrators' expertise." *Id.* at 930. Moreover, Defendants have shown that while Plaintiff was in segregation, he had alternative means of exercising religion as he was allowed to correspond with religious persons, read religious materials, have visits and phone calls with religious persons, pray and/or meditate, conduct his own private religious service within his cell, and possess medallions up to two inches in diameter (DN 19, Jailer Blue Aff.). Plaintiff does not refute these facts and, therefore, fails to demonstrate a First Amendment violation. *See Arauz v. Bell*, 307 F. App'x 923, 929 (6th Cir. 2009) ("'The courts have consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling.'") (quoting *Walker v. Mintzes*, 771 F.2d at 930).

### C. Denied Access to Courts

In his verified complaint, Plaintiff asserts that while in segregation he was denied "access to a propr law library. The law clearly states that any inmate who has pending charges that are punishable by prison time must be given access to a law library with the rules of civil and criminal procedures. All they have is the KRS book!" (DN 1). He further asserts, "I don't have any access to my court appointed attorney." *Id.*

Defendants state, as a threshold matter, that Plaintiff has not associated any of the Defendants with his claim of denied access to courts. They continue that despite Plaintiff's claim that he did not have access to his attorney, he was allowed to see his attorney at any time; was allowed have one phone conversation per week with his attorney; and was allowed unlimited written correspondence with his attorney (DN 19, Jailer Blue Aff.). Defendants argue that whether Plaintiff and/or his attorney chose to take advantage of this access is beyond Defendants' control. Defendants further advise that Plaintiff was transported to all court dates as ordered (DN 19, Jailer Blue Aff.). Finally, Defendants argue that Plaintiff has failed to allege any injury associated with his alleged lack of access to courts.

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered. *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). An inmate who claims his access to the courts was denied merely because he was denied access to the prison library, or certain books, fails to state a claim. *Walker v. Mintzes*, 771 F.2d at 932. Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program

12

hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id.* He must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis v. Casey*, 518 U.S. at 356 (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented"). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis v. Casey*, 518 U.S. at 352-53. "[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In asserting that he was denied access to a proper law library and only has access to "the KRS book," Plaintiff has merely alleged that the law library is "subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. at 351. He has failed to "go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." *Id.*

Plaintiff additionally states that "I don't have any access to my court appointed attorney" but fails to explain this statement further. Defendants, by Jailer Blue's affidavit, demonstrate

that Plaintiff did have access to his attorney through visits at the jail, via written correspondence, and by telephone once per week. Plaintiff does not counter these averments. Moreover, Plaintiff fails to show that the denied access to his court-appointed attorney resulted in any actual injury to his criminal case.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's denied-access-to-courts claims.

## IV.  ORDER

Plaintiff has failed to refute Defendants' arguments in their summary-judgment motions and has failed to demonstrate the existence of genuine issues of material fact. Therefore, Defendants Coy, Lewis, and Kamar are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendants' motions for summary judgment (DNs 19 & 25) are **GRANTED** and the claims against them are **DISMISSED**.

Date: March 25, 2014

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Counsel for Defendants
4414.005